IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BRITISH TELECOMMUNICATIONS PLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C. A. No.: _____ |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| VALVE CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff British Telecommunications plc ("BT") files this Complaint for Patent Infringement against Defendant Valve Corporation ("Valve"), and alleges as follows:

### NATURE OF THIS ACTION

1.      This is a patent infringement action brought by BT against Valve based on Valve's continued willful infringement of U.S. Patent No. 6,578,079 (entitled "Communications Node for Providing Network Based Information Service") (the "Gittins" Patent), U.S. Patent No. 6,334,142 (entitled "Method For Automatic And Periodic Requests For Messages To An E-mail Server From The Client ") (the "Newton" Patent), U.S. Patent No. 6,694,375 (entitled "Communications Network And Method Having Accessible Directory Of User Profile Data") (the "Beddus" Patent), and U.S. Patent No. 7,167,142 (entitled "Multi-user Display System") (the "Buckley" Patent) (collectively, the "Patents-In-Suit").

2.      A true and correct copy of the Gittins Patent is attached as Exhibit A.

3.      A true and correct copy of the Newton Patent is attached as Exhibit B.

4.      A true and correct copy of the Beddus Patent is attached as Exhibit C.

5.      A true and correct copy of the Buckley Patent is attached as Exhibit D.

## PARTIES

6.      Plaintiff British Telecommunications plc is a corporation organized under the laws of England and Wales, and has a principal place of business at 81 Newgate Street, London EC1A 7AJ, United Kingdom.

7.      Upon information and belief, Defendant Valve Corporation is incorporated in the State of Washington, with a principal place of business at 10900 NE 4th Street, Suite 500, Bellevue, Washington, 98004.

## JURISDICTION AND VENUE

8.      This is an action for patent infringement arising under the United States patent statutes, 35 U.S.C. § 100, *et seq.*

9.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

10.     This Court has personal jurisdiction over Defendant Valve as a result of Valve's continuous and systematic contacts with the State of Delaware, including, *inter alia*, their continuous contacts with, and sales to, customers in Delaware.  Valve distributes, offers for sale, sells, uses, imports and/or advertises products and services that infringe the claims of the Patents-In-Suit in the State of Delaware, and are accessible to and accessed by customers of this District, *e.g*., through the internet.

11.     Venue is proper in this District under 28 U.S.C. §§ 1391(b), 1391(c), and/or 1400(b).

## FACTUAL BACKGROUND

### British Telecommunications plc ("BT")

12.     BT is the oldest telecommunications company in the world, tracing its origins

2

back to the Electric Telegraph Company, which was incorporated in England in 1846.   Today, BT provides communications services in 170 countries and employs more than 100,000 people worldwide.

13.    From its earliest beginnings, BT has been on the forefront of research and innovation in the world of communications, starting with its adoption in the nineteenth century of leading-edge telegraphy technology, including the world's first commercial telegraph service.

14.    In 1975, BT opened its renowned research facility at Adastral Park, near Ipswich in the county of Suffolk, England.  Adastral Park has housed some of the leading technology researchers and engineers in the world, whose inventive efforts led to the issuance of more than 10,000 patents by the turn of the century.

15.    BT has continued to maintain its longstanding commitment to research and innovation, and spends £470,000,000 (four hundred and seventy million pounds sterling) annually on research and development, while employing over 14,000 scientists and technologists worldwide.   BT's own inventive efforts have led to numerous patents, including each of the Patents-In-Suit.

## Valve

16.    Upon information and belief, Valve is a game developer, publisher and digital distribution company that offers a broad range of products and services which incorporate technologies invented by BT.  These include, *inter alia,* Valve's Steam Library, Valve's Steam Chat, Valve's Steam Messaging, and Valve's Steam Broadcasting.  Valve's internet-based digital distribution platform for video games, Steam, is the largest in the world and supports thousands of games, some of which have been developed by Valve itself and some of which have been developed by others.

3

17.     On multiple occasions, BT has notified Valve of its infringement of the Patents-In-Suit, which incorporate patented technologies that include, *inter alia*, digital rights management, broadcasting, voice and chat, and messaging, and requested that Valve enter into discussions with BT to address it, *e.g.*, through a licensing arrangement.

18.     Valve has derived and will continue to derive substantial value from these products and services which incorporate the patented technologies.  Nonetheless, Valve has failed to respond to BT's correspondence, at all, and chosen instead to continue to infringe the Patents-in-Suit willfully and wantonly.

19.     Specifically, on October 8, 2015, the chief counsel for Intellectual Property Rights of BT ("BT's IPR Counsel") sent a letter to Valve's General Counsel, identifying the Patents-In-Suit and providing clear notice that Valve infringed them.  The October 8, 2015 letter provided a summary of each Patent-In-Suit and enclosed claim charts explaining Valve's infringement of a representative claim, in detail, on an element-by-element basis.

20.     Neither Valve's General Counsel, nor anyone else at Valve, responded to BT's October 8, 2015 letter.

21.     On December 21, 2015, BT's IPR counsel sent a follow-up letter to Valve's General Counsel reminding Valve that BT had not received any response from Valve and inviting a response.

22.     Once again, neither Valve's General Counsel nor anyone else at Valve responded to BT.

23.     On April 11, 2016, BT's IPR counsel sent yet another letter to Valve's General Counsel indicating that it had been almost seven months since Valve had been placed on notice of infringement without a response.  BT noted that its efforts to initiate a dialogue with Valve

regarding Valve's ongoing infringement had gone un-acknowledged and un-answered.  BT advised Valve that if Valve did not respond, BT would have the right to pursue damages against Valve for Valve's willful infringement of BT's patents.

24.     Yet again, neither Valve's General Counsel nor anyone else at Valve responded to BT's letter.

25.     Despite BT's repeated attempts to reach an amicable resolution with Valve, and BT's numerous requests that Valve stop infringing the Patents-In-Suit, Valve has continued to infringe willfully and wantonly.  BT brings this action to recover the just compensation it is owed for Valve's past infringement, and to prevent Valve from continuing to benefit from the patented inventions in the future without authorization or compensation to BT.

### Valve Infringes the Gittins Patent

26.     The Gittins Patent (U.S. Patent No. 6,578,079) was issued by the USPTO on June 10, 2003.  BT is the lawful owner by assignment of all rights, title and interest in the Gittins Patent, including the right to sue for patent infringement and damages, including past damages.

27.     The Gittins Patent relates generally to providing users with content that originates from multiple subscription services and delivering it through a single portal where a customer may access content for which it has access rights.  The user requests content directly from the portal instead of requesting content separately from each of the subscription services.  The portal can obtain the items from the remote sources or, alternatively, from readily-accessible storage associated with the portal where the items were previously stored so that they are available on demand.

28.     The Gittins Patent has previously been asserted in this Court in *British Telecommunications plc v. Google Inc*., C.A. No. 11-1249-LPS and is the subject of a claim

construction Order issued by Judge Stark dated September 9, 2013, and an accompanying Memorandum Opinion of the same date.

29.     As described in detail below, Valve's Steam infringes the Gittins Patent as construed by this Court.  Valve's Steam locally stores third-party content, such as video games, and, through the Steam platform, makes them accessible to users who have access rights, precisely as claimed.

## Valve Infringes the Newton Patent

30.     The Newton Patent (U.S. Patent No. 6,334,142) was issued by the USPTO on December 25, 2001.  BT is the lawful owner by assignment of all rights, title and interest in the Newton Patent, including the right to sue for patent infringement and damages, including past damages.

31.     The Newton Patent relates generally to a method for delivering structured messages comprised of information and data parts to an intended audience in a reliable and predictable manner.  Messages are stored as files at a server for retrieval by the intended clients. Each client transmits requests for messages to the server at automatic and periodic intervals.

32.     As described in detail below, Valve's Steam Chat infringes the Newton Patent. Valve's Steam Chat delivers messages to users comprised of information and data parts.  The messages are stored as files at a Valve server for retrieval by the intended uses.  The Valve software client transmits requests for messages to the Valve server at automatic and periodic intervals, which are subsequently displayed at user terminals.

## Valve Infringes the Beddus Patent

33.     The Beddus Patent (U.S. Patent No. 6,694,375) was issued by the USPTO on February 17, 2004.  BT is the lawful owner by assignment of all rights, title and interest in the

Beddus Patent, including the right to sue for patent infringement and damages, including past damages.

34.     The Beddus Patent relates generally to a communications system in which a user is provided with different communication mechanisms and each mechanism is associated with a call control protocol.  The user's status is monitored, and when the user is determined to be logged out of the system, persistent communication mechanisms are available and at least one non-persistent communication mechanism is unavailable.

35.     As described in detail below, Valve's Steam Messaging infringes the Beddus Patent.  Valve operates a communications network to support Valve Steam Messaging where users are provided with different communications mechanisms (*e.g*., text chat and VoIP calls), and each mechanism is associated with a call control protocol.  A user's status is monitored, and when the user is determined to be logged out of the system, text chat (here, a persistent communication mechanism) is available and VoIP calls are disabled.

## Valve Infringes the Buckley Patent

36.     The Buckley Patent (U.S. Patent No. 7,167,142) was issued by the USPTO on January 23, 2007.  BT is the lawful owner by assignment of all rights, title and interest in the Buckley Patent, including the right to sue for patent infringement and damages, including past damages.

37.     The Buckley Patent generally relates to a multi-user display system and method for controlling a communal display that includes at least two independent workstations and an interface server for connection to a data network.

38.     As described in detail below, Valve's Steam Broadcasting infringes the Buckley Patent.  Steam Broadcasting controls a communal display that allows a game player to share a

streaming video of their game play with one or more second users.  Steam Broadcasting also uses an interface server that manages the users and their requests.

COUNT I
(INFRINGEMENT OF U.S. PATENT NO. 6,578,079)

39.    BT repeats and realleges the allegations contained in Paragraphs 1 through 38 above as if fully set forth herein.

40.    Valve has directly infringed and continues to directly infringe, literally or under the doctrine of equivalents, one or more claims of the Gittins Patent in violation of 35 U.S.C. §271(a) by making, using, offering to sell, selling (directly or through intermediaries), and/or importing, in this District and elsewhere in the United States, Valve's Steam platform.

41.    For example, Valve infringes claim 21 of the Gittins Patent, which provides as follows:

> A method of operating a communications network to provide a network-based information service, the method comprising the following steps:
>
> step a—storing customer identities, respective customer-associated lists of identities of information items, hereinafter referred to as items, for which the respective associated customer has access rights, and identities of item-associated information sources from which the respective items can be retrieved;
>
> step b—receiving at the network a message requesting access to the information service and comprising at least a customer identity;
>
> step c—reading the contents of the received message;
>
> step d—retrieving from storage the list of information item identities associated with the received customer identity;
>
> if no item identity is received in step b,
>
> step e1—sending said list to the customer; and
>
> step e2—reading an item identity from a further message received from the customer;

8

or, on the other hand, if an item identity is received in step b,

step f—ascertaining whether or not that received item identity is in said list;

and for such item identity received in step b, if it is ascertained in step f that said received item identity is in said list, or, alternatively, for the item identity received in step e2, as the case may be,

step g—ascertaining the identity of the information source associated with that received item identity;

step h—retrieving the requested item from that information source; and

step i—sending at least the first page of the retrieved item to the customer.

42.      Valve performs each and every step of claim 21 and has been placed squarely on notice of its infringement by the detailed mapping of Valve's infringement set forth in the claim chart attached to BT's notice letter of October 8, 2015.

43.      In general, upon information and belief, Valve operates a communications network which offers digital content (*e.g.*, video games) to its customers for purchase.  Valve obtains such digital content from third-party publishers and producers and stores it within its computer systems, tracks the items to which a customer has access rights, and stores those items at a readily-accessible location for retrieval and delivery to the customer.

44.      More particularly, upon information and belief, Valve stores unique customer identifiers, including, for example, a unique "SteamID."  As shown below, Valve customers log in to Valve's Steam application using a unique user name (or "Account name") and a password in order to, for example, purchase digital content or view a list of the digital content he/she has the right to access.  Valve authenticates the customer by verifying that the customer has entered a correct username and password combination.



45.    Upon information and belief, Valve stores a customer-associated list of the identities of digital content (*e.g.*, video games) that he/she has the right to access, *e.g.*, because the customer has purchased the video game.    Below is an example of a "customer-associated list" that is sent to the customer for display.   Specifically, this user has access rights to two different video games, "Grand Theft Auto IV" and "Grand Theft Auto San Andreas."



46.    Upon information and belief, Valve stores within its file systems video games that originated with third party publishers and producers as well as the identities of the locations

where such digital content is stored within its file systems, so that the digital content can be retrieved and delivered to customers.

47.     Upon information and belief, Valve receives HTTP messages from a customer who is logged in.  These messages include a cookie, or may include an equivalent form of unique identifier ("customer identity").   Valve's computer systems read this message to send an appropriate response to the customer.

48.     Upon information and belief, Valve uses the unique identifier to retrieve the list of video games the customer has the right to access.  If the access request message does not contain the identity of an item of digital content (*e.g.*, a particular video game), then Valve will send to the customer a list of items the customer is authorized to access.

49.     Upon information and belief, a Steam User's Library is displayed in graphical form as exemplified below.



50.     Upon information and belief, the customer can select an item of digital content (*e.g.*, a video game from the list) and the identity of this item will be sent to Valve which identity will be read by Valve's computer systems.  When the user wants to download a game they have

already purchased (*e.g*., as above with "Grand Theft Auto IV"), the user can click the "INSTALL" button shown above.

51.     Upon information and belief, if the identity of an item of digital content (*e.g*., a particular game) was included in an access request message, then Valve ascertains whether or not that item is in the list of digital content the customer has the right to access.

52.     Upon information and belief, if the received item identity is in the customer's "customer-associated list" (*e.g*., as above with "Grand Theft Auto IV"), Valve will ascertain the identity of the storage location associated with the received item identity and retrieve the item from storage. For example, Valve will ascertain where in its file system the game "Grand Theft Auto IV" is located and retrieve the game from its storage location to begin sending the game to the customer.



53.     Upon information and belief, Valve has known of the Gittins Patent and its infringement since October of 2015, following its receipt of BT's notice letter dated October 8, 2015.  In that letter, BT identified the Gittins patent, alleged that Valve's Steam infringed the Gittins patent, and provided a claim chart explaining, on an element-by-element basis, Valve's infringement of claim 21.

54.     BT sent follow-up letters to Valve on or about December 21, 2015 and April 11,

2016.  Valve never responded to any of BT's letters.

55.     Despite BT's written notice to Valve spelling out Valve's infringement of the Gittins patent, Valve has not stopped its infringement.  Rather, Valve continues to make, use, and offer Valve's Steam distribution platform in a manner which infringes the Gittins patent.

56.     Valve's infringement of the Gittins Patent has been and is willful because Valve has known of the Gittins patent, known that Valve's Steam infringes the Gittins Patent, failed to even respond to any of BT's correspondence, and still continues to offer its Steam platform in an infringing manner in disregard of BT's patent rights.

57.     More particularly, following BT's notice, Valve has continued to infringe by using the claimed method to service its clients.  In this regard, Valve has knowingly encouraged and intended—and continues to encourage and intend—for its customers to install Steam; create a Steam Account at https://store.steampowered.com/join; browse for digital content online, such as video games; purchase games on Steam; create a library of purchased digital content associated with their account; add digital content to their library; and request download of digital content and otherwise use Steam services that infringe.

58.     For example, Valve's website advertises that Steam "distributes and manages thousands of games directly to a community of more than 65 million players around the world"[1] and that users should "join Steam" to "buy and download full retail games."[2]  Further, Valve instructs users to "create your Steam account and get Steam, the leading digital solution for PC and Mac gamers."[3]

59.     In addition, Valve markets and encourages the use of Steam by promoting the

---

[1] http://www.valvesoftware.com/index.html
[2] https://store.steampowered.com//login
[3] *Id.*

capability of Steam to allow a customer to "download and install a game in your library."[4] Specifically, Valve encourages customers to "manage your library by visiting your Games list on the web," "1. Log into your Steam account online from your computer or mobile device at www.steampowered.com," "2. Visit your Games list by clicking on your Steam persona at the top of the page, and then clicking Games in the secondary navigation bar," and "3. Locate your game and tap the install button to initiate your remote download."[5]

60.     Valve does not have a license or permission to use the claimed subject matter in the Gittins Patent.

61.     BT has been damaged and continues to be damaged by Valve's infringement of the Gittins Patent.

62.     BT is entitled to recover from Valve the damages sustained by BT as a result of Valve's wrongful acts in an amount subject to proof at trial and up to three times its actual damages due to Valve's willful infringement.

COUNT II
(INFRINGEMENT OF U.S. PATENT NO. 6,334,142)

63.     BT repeats and realleges the allegations contained in Paragraphs 1 through 38 above as if fully set forth herein.

64.     Valve has directly infringed and continues to directly infringe, literally or under the doctrine of equivalents, one or more claims of the Newton Patent in violation of 35 U.S.C. §271(a) by making, using, offering to sell, selling (directly or through intermediaries), and/or importing, in this District and elsewhere in the United States, Valve's Steam Chat.

65.     For example, Valve infringes claim 1 of the Newton Patent, which provides as follows:

---

[4] https://support.steampowered.com/kb_article.php?ref=6324-IGHC-5301
[5] *Id.*

A method of supplying messages said method comprising:

storing messages on a server which is accessible by a group of clients operated by users, each message being stored by performing the following operations:

receiving the message at said server from one of said group of clients, said message comprising an information part and a data part, the data part including at least one identifier specifying the intended audience of the message;

storing the information part of the message as a file at an address in a first store;

storing said address and said at least one identifier in a second store; and

viewing messages intended for a particular user on one of said clients by performing the following operations:

said client transmitting requests automatically at periodic intervals to the server for messages intended for said particular user;

in response to each request, the server scanning the second store to compile a list of addresses of messages intended for said particular user;

the server transmitting files stored at addresses specified on said list to said client; and

said client displaying messages received by the client.

66.     Valve performs each and every step of claim 1 and has been placed squarely on notice of its infringement by the detailed mapping of Valve's infringement set forth in the claim chart attached to BT's notice letter of October 8, 2015.

67.     In general, upon information and belief, Valve performs a method of supplying messages to users via Steam Chat.  This method is performed by both Valve's Steam servers (such as api.steampowered.com) and the Steam Client software, as loaded onto a Steam user's computer or mobile device.

68.     More particularly, upon information and belief, chat messages are stored on a

Valve server which is accessible by multiple Steam Clients.  When a user sends a chat message, the Steam Client sends a message via an HTTP POST, which is received by Valve's servers. For example, the below screenshot shows the message "hi" being sent.



69.     Upon information and belief, the message itself comprises an "information part" and a "data part".  With regard to the information part, the HTTP request contains form data, including "text," which contains the message information itself.

70.     For example, in the below excerpt (corresponding to the "hi" message shown in the picture above), the "information part" appears in "text" (*see* red font).  The message also contains a "data part" – the "steamid_dst" part (*see* green font).  The "steamed_dst" part includes an integer identifier that corresponds to the message's intended audience (shown above as a number beginning with "7656119").

```
POST
https://api.steampowered.com/ISteamWebUserPresenceOAuth/Message/v
0001
...
access_token=…
umqid=…
type=saytext
steamid_dst=7656119…
text=hi
```

71.     Upon information and belief, Valve stores message information within a Steam store (or "first store").

72.     Upon information and belief, Valve stores an identifier specifying the audience of the message.   Valve also stores the "address" at which the information part is stored.   The portion of the Valve data store that stores the identifier and the address (or equivalent) is a "second store."

73.     Upon information and belief, the Steam Client periodically and automatically transmits requests to Valve's servers for information relevant to the particular user, including messages intended for that user.

74.     Upon information and belief, Valve's servers transmit a two-part response to the user.   The first part is sent immediately and indicates that a message has been sent to the user. This first part includes an indication of who the message is from and when it was sent.   Then, the Steam Client automatically makes a request for the content portion of the message.   Valve's servers subsequently transmit the second part of the message to the Steam Client, which contains the "information part."

75.     Upon information and belief, Valve has known of the Newton Patent and its infringement since October of 2015, following receipt of BT's notice letter of October 8, 2015. In that letter, BT identified the Newton patent, alleged that Valve's Steam Chat infringed the

Newton patent, and provided a claim chart explaining, on an element-by-element basis, Valve's infringement of claim 1.

76.     BT sent follow-up letters to Valve on or about December 21, 2015 and April 11, 2016.  Valve never responded to any of BT's letters.

77.     Despite BT's written notice to Valve spelling out Valve's infringement of the Newton patent, Valve has not stopped its infringement.  Rather, Valve continues to make, use, and offer Valve's Steam Chat in a manner which infringes the Newton patent.

78.     Valve's infringement of the Newton Patent has been and is willful because Valve has known of the Newton patent, known that Valve's Steam Chat infringes the Newton Patent, failed to even respond to any of BT's correspondence, and still continues to offer Steam Chat in an infringing manner in disregard of BT's patent rights.

79.     Valve does not have a license or permission to use the claimed subject matter in the Newton Patent.

80.     BT has been damaged and continues to be damaged by Valve's infringement of the Newton Patent.

81.      BT is entitled to recover from Valve the damages sustained by BT as a result of Valve's wrongful acts in an amount subject to proof at trial and up to three times its actual damages due to Valve's willful infringement.

COUNT III<br>(INFRINGEMENT OF U.S. PATENT NO. 6,694,375)

82.     BT repeats and realleges the allegations contained in Paragraphs 1 through 38 above as if fully set forth herein.

83.     Valve has directly infringed and continues to directly infringe, literally or under the doctrine of equivalents, one or more claims of the Beddus Patent in violation of 35 U.S.C.

18

§271(a) by making, using, offering to sell, selling (directly or through intermediaries), and/or importing, in this District and elsewhere in the United States, Valve's Steam Messaging.

84.    For example, Valve infringes claim 1 of the Beddus Patent, which provides as follows:

> A method of operating a communications network, comprising;
>
> a) for each of a plurality of users of the network, storing user profile data in a directory, which is accessible to other users of the network, the user profile data including identifiers for one or more of a plurality of different call control protocols, wherein at least one of the identifiers is for a call control protocol which is designated as being non-persistent;
>
> b) prior to establishing a call from a calling party to a called party, determining if the called party is logged into the network and if so making available to the calling party all of said identifiers whereas if the called party is not determined to be logged into the network, making available to the calling party all of the identifiers except the at least one identifier designated as being non-persistent; and
>
> c) subsequently establishing the call using a call control protocol by the identifier or identifiers made available to the calling party in step b).

85.    Valve performs each and every step of claim 1 and has been placed squarely on notice of its infringement by the detailed mapping of Valve's infringement set forth in the claim chart attached to BT's notice letter of October 8, 2015.

86.    Upon information and belief, Valve operates a communications network to support the Steam Messaging Application.  More specifically, Valve stores profiles for each Steam user in one or more databases, which are accessible to others in the network.  For example, Steam user profiles contain a user name, location, summary and recent activity of a user.  The below screenshot shows the profile of user "Smith Smith" as viewed by a friend of Smith Smith.



87.     Upon information and belief, when users wish to communicate with one another, they can click the "Send a Message" button (shown above), which opens another part of the user profile (shown below).



88.     Upon information and belief, clicking on the name of a user (here, "Smith Smith") leads to another screen that shows identifiers for that individual that correspond to the

various communication mechanisms associated with that individual. For example, the "Start voice chat" menu item (shown below), identifies the control protocol that corresponds to a VoIP voice call. The text box and send button correspond to the control protocol underlying text chat. Text chat and VoIP calls each use different call control protocols. VoIP in this context is a "non-persistent" communication mechanism and is only available when both parties to the call are logged onto the Steam application.



89.      Upon information and belief, Steam determines whether the to-be-called party is logged onto the network and displays whether or not the party is active to the caller. For example, the above screenshot shows that "Smith" is logged into the network through the use of the word "Online" and by enabling the "Start voice chat" menu item. When the to-be-called party is determined to be logged into the network, the caller is presented with the option to either initiate a VoIP call (using the non-persistent protocol) or initiate a text chat (using the persistent protocol).

90.      Upon information and belief, when the to-be-called party is not logged into the

network, only the chat functionality is presented to the caller and the VoIP functionality is disabled.  The next time the called party logs into the application he/she receives a notification that a text chat message has been received and is available to be viewed.  The below screen capture shows the message "hi" typed in the chat bar and being sent from the caller's device.



91.     When the called party subsequently logs into system, they can open the chat to respond to the message.  Similarly, the caller can make a VoIP call to the called party, if the called party is logged into the application.

92.     Upon information and belief, Valve has known of the Beddus Patent and its infringement since October of 2015, following receipt of BT's notice letter of October 8, 2015. In that letter, BT identified the Beddus patent, alleged that Valve's Steam Chat infringed the Beddus patent, and provided a claim chart explaining, on an element-by-element basis, Valve's infringement of claim 1.

93.     BT sent follow-up letters to Valve on or about December 21, 2015 and April 11, 2016.  Valve never responded to any of BT's letters.

94.     Despite BT's written notice of Valve's infringement of the Beddus patent, Valve

has not stopped its infringement.  Rather, Valve continues to make, use, and offer Valve's Steam Messaging, which infringes the Beddus patent.

95.      Despite BT's written notice to Valve spelling out Valve's infringement of the Beddus patent, Valve has not stopped its infringement.  Rather, Valve continues to make, use, and offer Valve's Steam Messaging in a manner which infringes the Beddus patent.

96.      Valve's infringement of the Beddus Patent has been and is willful because Valve has known of the Beddus patent, known that Valve's Steam Messaging infringes the Beddus Patent, failed to even respond to any of BT's correspondence, and still continues to offer Steam Messaging in an infringing manner in disregard of BT's patent rights.

97.      More particularly, following BT's notice, Valve has continued to infringe by using the claimed method to service its clients.  In this regard, Valve has knowingly encouraged and intended—and continues to encourage and intend—for its customers to use Steam's services that infringe.  For example, Valve's website encourages users to "To start using Steam chat with SILK, simply click the 'Start Voice Chat' button within a friend or group chat on Steam."[6]

98.      Valve does not have a license or permission to use the claimed subject matter in the Beddus Patent.

99.      BT has been damaged and continues to be damaged by Valve's infringement of the Beddus Patent.

100.     BT is entitled to recover from Valve the damages sustained by BT as a result of Valve's wrongful acts in an amount subject to proof at trial and up to three times its actual damages due to Valve's willful infringement.

---

[6] http://store.steampowered.com/news/5100/

COUNT IV
(INFRINGEMENT OF U.S. PATENT NO. 7,167,142)

101.    BT repeats and realleges the allegations contained in Paragraphs 1 through 38

above as if fully set forth herein.

102.    Valve has directly infringed and continues to directly infringe, literally or under

the doctrine of equivalents, one or more claims of the Buckley Patent in violation of 35 U.S.C.

§271(a) by making, using, offering to sell, selling (directly or through intermediaries), and/or

importing, in this District and elsewhere in the United States, Valve's Steam Broadcasting.

103.    For example, Valve infringes claim 18 of the Buckley Patent, which provides as

follows:

> A method for controlling a communal display including at least two
> independent workstations and an interface server for connection to a data
> network, said method comprising:
>
> responsive to input from each of the workstations, recovering requested
> data and transmitting said data only to the requesting workstation,
>
> responsive to a first kind of input instruction from one of the workstations,
> causing the current display on that workstation to be replicated for
> communal display; and
>
> responsive to a second kind of input from one of the workstations, causing
> the current communal display to be replicated on that workstation.

104.    Valve performs each and every step of claim 18 and has been placed squarely on

notice of its infringement by the detailed mapping of Valve's infringement set forth in the claim

chart attached to BT's notice letter of October 8, 2015.

105.    In general, upon information and belief, Valve's Steam Broadcasting performs a

method of controlling a communal display, which allows a game player (a "First User") to share

a streaming video of their game play with one or more second users (a "Second User").

106.    More particularly, upon information and belief, the Steam Server receives

communications from a First User that indicate that he/she desires to broadcast their game play. By way of example, when a First User playing the video game "Counter-Strike Global Offensive" enables broadcast (from the Settings screen), the Steam client software at the First User workstation generates an input, which is received by the Steam server.



107.    Upon information and belief, the Steam Server receives communications from a second workstation, indicating that the Second User desires to watch a broadcast.  As a result of receiving this input, the Steam server sends a broadcast of the First User's game to the workstation of the Second User, as shown below.



108.    Upon information and belief, Valve has known of the Buckley Patent and its infringement since October of 2015, following receipt of BT's notice letter of October 8, 2015. In that letter, BT identified the Buckley patent, alleged that Valve's Steam Broadcasting infringed the Buckley patent, and provided a claim chart explaining, on an element-by-element basis, Valve's infringement of claim 18.

109.    BT sent follow-up letters to Valve on or about December 21, 2015 and April 11, 2016.  Valve never responded to any of BT's letters, choosing instead to continue to infringe.

110.    Despite BT's written notice to Valve spelling out Valve's infringement of the Buckley patent, Valve has not stopped its infringement.  Rather, Valve continues to make, use, and offer Valve's Steam Broadcasting in a manner which infringes the Buckley patent.

111.    Valve's infringement of the Buckley Patent has been and is willful because Valve has known of the Buckley patent, known that Valve's Steam Broadcasting infringes the Buckley Patent, failed to even respond to any of BT's correspondence, and still continues to offer Steam in an infringing manner in disregard of BT's patent rights.

112.    More particularly, following BT's notice, Valve has continued to infringe by using the claimed method to service its clients.  In this regard, Valve has knowingly encouraged and intended—and continues to encourage and intend—for its customers to install Steam; create a Steam Account at https://store.steampowered.com/join; sign-in; and watch friends play.

113.    For example, Valve's website advertises that with Steam Broadcasting users can "Watch friends play, with the click of a button."[7]  According to Steam, "[w]hen you see a friend in game, simply click on 'Watch Game' from their profile or from the Steam Client Friend's List to open a window into their gameplay -- no game ownership, special fees, or additional apps

---

[7] https://steamcommunity.com/updates/broadcasting

required."[8]

114.    In addition, Valve markets and encourages the use of Steam Broadcasting by promoting the capability of Steam to allow a customer or end user to "[w]atch your friends play" and telling them to "[t]ry it now."[9]   Valve further instructs users that you can decide who watches your game—"[t]he first time a friend asks to watch your game you'll be presented with the broadcast privacy setting…."   And, "If you select 'Anyone can watch my games' then your broadcast will be visible on that game hub."   Further, Valve explains that "[w]hen you're playing a game and someone starts watching, you automatically start broadcasting."   Further still, Valves makes the Steam Broadcasting supporting documentation available to users.[10]

115.    Valve does not have a license or permission to use the claimed subject matter in the Buckley Patent.

116.    BT has been damaged and continues to be damaged by Valve's infringement of the Buckley Patent.

117.     BT is entitled to recover from Valve the damages sustained by BT as a result of Valve's wrongful acts in an amount subject to proof at trial and up to three times its actual damages due to Valve's willful infringement.

## PRAYER FOR RELIEF

WHEREFORE, BT respectfully requests that this Court enter judgment against Valve, granting BT the following relief:

A.    A judgment holding Valve liable for direct infringement of the Gittins, Newton, Beddus, and Buckley Patents;

B.    Damages resulting from Valve's infringement of Gittins, Newton, Beddus, and

---

[8] http://store.steampowered.com/news/15117/
[9] *Id.*
[10] https://support.steampowered.com/kb_article.php?ref=6730-TOAK-6497

Buckley Patents in an amount to be proven at trial, but no less than a reasonable

royalty, together with pre-judgment interest and post-judgment interest;

C.      A judgment holding Valve's infringement of the Gittins, Newton, Beddus, and

Buckley Patents to be willful and deliberate, and a trebling of damages pursuant

to 35 U.S.C. § 284;

D.      A judgment holding this to be an exceptional case, and an award to BT for its

attorneys' fees, costs and expenses incurred prosecuting this action pursuant to 35

U.S.C. § 285;  and

E.      Such other and further relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

BT demands a trial by jury of all issues so triable.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Melanie K. Sharp*

_____
Melanie K. Sharp (No. 2501)
Robert M. Vrana (No. 5666)
1000 North King Street
Wilmington, DE  19801
(302) 571-6681
msharp@ycst.com

PROSKAUER ROSE LLP
James H. Shalek*
Baldassare Vinti*
Nolan M. Goldberg*
Fabio E. Tarud*
Daniel J. Werb*
Eleven Times Square
New York, NY  10036
(212) 969-3000

*Pro hac vice* admission pending.

Dated:  July 28, 2016                    *Attorneys for British Telecommunications plc*
01:18998425.1